PENNSYLVANIA DENTAL HYGIENISTS' ASSOCIATION, INC., Robin S. Holmes, RDH, Esq., Anne Schlegel Follweiler, RHD, MA, Susanne Kozich Giorgio, RDH, Darla Brown Logue, RHD, MPA, Robert L. Miller, RDH, BS, Marilyn Jane Roth Smith, RDH, Lisa Jade Rowley, RDH, MS, Janet Patrick Weber, RDH, MED, Susan Lea Wienand, RDH, BS, Ivy Ladonna Frisby Al–Fareed, RDH, BS, Carol Black, RDH, Lynn Black Fox, RDH, Susan J. Hallowell Izzo, RDH, Julianne Bravacos Siegele, RDH, MS, Christine Dayton, Penny First, Esq., Marlene Hornberger, Ralph Khan, DO, PHD, Bruce L. Marra, Daniel G. Megivern, MD, Daniel J. Pisano, MD, Roger V. Smith, Holly L. Taylor, Grace Gibson Devlin, RDH, Jane L. Forrest, RDH, EDD, Jaclyn Martha Gleber, RDH, MED, Anita Lantzy, RDH, EMT, Linda Bethas Moore, RDH, Cheryl Lynn George, RDH, and Charles B. Inlander, Petitioners,

v.

STATE BOARD OF DENTISTRY and Edwin F. Weaver, III, D.D.S., Chairman, State Board of Dentistry, Respondents.

Commonwealth Court of Pennsylvania.

Argued Dec. 7, 1995.

Decided March 1, 1996.

Thomas J. Weber, for Petitioners.

Judith Pachter Schulder, for Respondents.

Before SMITH and PELLEGRINI, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

The State Board of Dentistry and its Chairman, Edwin F. Weaver, III (collectively, Board) has filed preliminary objections to the petition for review filed by the Pennsylvania Dental Hygienists' Association, its individual members and others (collectively, Association) seeking a declaratory judgment and injunctive relief. We sustain the preliminary objections and dismiss the petition for review.

On June 24, 1995, the Board enacted new regulations amending, *inter alia*, provisions governing dental hygienists. Under Sections 33.1, 33.205, and 33.302 of the new regulations, 49 Pa.Code §§ 33.1, 33.205 and 33.302, dental hygienists may perform dental hygiene services under either direct supervision[1] or general supervision[2] of dentists,

---

**1.** "Direct supervision" is defined as "[s]upervision by a dentist who examines the patient, authorizes the procedure to be performed, is physically present in the dental facility and available during performance of the procedure, and exam-ines and takes full professional responsibility for the completed procedure." *49 Pa.Code § 33.1.*

**2.** "General supervision" is defined as "supervision by a dentist who examines the patient, de-

depending on (1) the kinds of services provided; (2) the patients' medical conditions to be determined utilizing ASA (American Society of Anesthesiologists) Classifications;[3] and (3) the location of the dental hygienists' practice sites, i.e., at dental facilities, at public or private institutions such as schools, hospitals, or nursing homes, or at institutions under the jurisdiction of federal, state or local health agencies. In addition, dental hygienists may perform radiologic procedures only under the direct supervision of dentists. 49 Pa.Code § 302.

On August 4, 1995, the Association filed the petition for review in this Court's original jurisdiction, challenging the validity of 49 Pa.Code §§ 33.1, 33.205 and 33.302. The Association alleged that the new regulations, which drastically changed the scope of the dental hygienists' practice, are invalid due to defects in the rulemaking process, including violations of the Sunshine Act,[4] the Commonwealth Documents Law,[5] and the Regulatory Review Act.[6] The Association further alleged that the Board exceeded its rulemaking authority granted by The Dental Law,[7] that the Board improperly delegated its regulatory authority to the ASA, and that the regulations are too vague and violate its constitutional right to equal protection and due process. The Association requested that this Court declare the regulations invalid and enjoin the Board from enforcing them.[8]

■ Subsequently, the Board filed preliminary objections to the petition for review raising lack of this Court's original jurisdiction over this matter, untimeliness of the challenge to the procedural defects of the regulations, failure to exhaust administrative remedies and failure to state a cause of ac-

tion. In ruling on preliminary objections, all well-pleaded facts in the petition for review and all inferences reasonably deducible therefrom must be accepted as true. *Pennsylvania Association of Rehabilitation Facilities v. Foster*, 147 Pa.Cmwlth. 487, 608 A.2d 613 (1992).

■ The Board first contends that the Association's action seeking pre-enforcement review of the newly enacted regulations is premature and not ripe for this Court's decision in its original jurisdiction.

■ Generally, courts are reluctant to grant a declaratory judgment and injunctive remedies against administrative agencies, unless the controversy is ripe for judicial resolution. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). The rationale behind the ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Id.* at 148–49, 87 S.Ct. at 1515.

■ Accordingly, this Court must refrain from exercising its original equitable jurisdiction to consider a pre-enforcement challenge to the validity of an administrative agency's regulations when there exists an adequate statutory remedy. *Arsenal Coal Co. v. Department of Environmental Resources*, 505 Pa. 198, 477 A.2d 1333 (1984). A statutory review process of an agency following its application and enforcement of the regulations constitutes adequate remedy for the purpose of determining the propriety of

velops a dental treatment plan, authorizes the performance of dental hygiene services to be performed within 90 days of the examination, and takes full professional responsibility for the performance of the dental hygienist." *Id.*

3. The Classifications range from the ASA Class I "for a patient without systemic disease" and the ASA Class V "for a moribund patient not expected to survive 24 hours with or without operation." 49 Pa.Code § 33.1.

4. Act of July 3, 1986, P.L. 388, 64 P.S. §§ 271–286.

5. Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. §§ 1101–1602.

6. Act of June 25, 1982, P.L. 633, *as amended*, 71 P.S. §§ 745.1–745.15.

7. Act of May 1, 1933, P.L. 216, *as amended*, 63 P.S. §§ 120–130i.

8. This Court denied the Association's motion for a preliminary injunction by order dated September 14, 1995.

this Court's exercise of its original jurisdiction, if the effect of the challenged regulations upon the industry regulated is not direct and immediate. *Id.*

■ Under Section 2 of The Dental Law, the Board is authorized to "issue rules ... defining the procedures that may be performed by dental hygienists ... including those procedures that may be performed under direct and general supervision." 63 P.S. § 121(f). The Board has powers and authorities to, *inter alia*, investigate, conduct hearings, discipline and prosecute those guilty of illegal practices, and administer and enforce the laws relating to the practice of dentistry and dental hygienists. Section 3 of The Dental Law, 63 P.S. § 122. Additionally, in the proceedings initiated to enforce its regulations the Board has ancillary jurisdiction to rule on the validity of the regulations, pursuant to Section 703(a) of the Administrative Agency Law, 2 Pa.C.S. § 703(a). *Arsenal Coal; Foster.*

The Board contends that such statutory post-enforcement remedies are adequate because the Association's allegations in the petition for review do not establish direct and immediate impact of the regulations upon dental hygienists.

The Association alleged in the petition for review that: (1) the regulations are self-executing and cause dental hygienists to alter their practice and cancel their services; (2) it will experience ongoing uncertainty in the day-to-day operations of dental care; (3) dental hygienists will suffer significant income reduction or in certain cases be unemployed; (4) there will be additional costs for dental hygiene care; (5) the availability of dental hygienists' services will be reduced; and (6) piecemeal disciplinary actions are inadequate to address its challenge to the regulations. The Association argues that these allegations are sufficient to establish direct and immediate harm under *Arsenal Coal* and *Rouse & Associates v. Pennsylvania Environmental Quality Board,* 164 Pa.Cmwlth. 326, 642 A.2d 642 (1994).

In *Arsenal Coal,* the anthracite coal mine operators alleged that under the regulations promulgated by the Environmental Quality Board, they would suffer ongoing uncertainty in the day-to-day business operations and would sustain substantial expenditure in order to comply with the regulations and impairment of the cash flow. The Pennsylvania Supreme Court held that those allegations were sufficient to establish direct and immediate harm.

In *Rouse,* the landowner alleged that under the new regulation enacted by the Environmental Quality Board, he would suffer actual, direct, immediate and present harm because the new regulations required him to spend substantial amounts of money and time to prepare and submit proposed sewer treatment plans and final land development plans and that he would be forced to await an administrative determination of his permit before he could proceed with his development or sell the property. The Court noted that the landowner was placed in a unique position by the zoning board's refusal to allow the landowner to connect to presently operating sewage disposal units and imposition of the condition requiring the landowner to construct a sewage treatment plant meeting the new regulation's standards. This Court concluded that the alleged circumstances were sufficient to demonstrate the existence of actual, present harm to establish the justiciability of the pre-enforcement challenge.

Contrary to the Association's assertion, *Arsenal Coal* and *Rouse* are factually distinguishable and therefore, do not control here. Unlike in those cases, the Association does not allege that dental hygienists are required to take any immediate actions or immediately spend substantial sums of money to comply with the new regulations. Moreover, costs incurred to challenge the regulations in a case-by-case post-enforcement proceeding are not the type of direct and immediate harm justifying this Court's exercise of its original jurisdiction. *Concerned Citizens of Chestnuthill Township v. Department of Environmental Resources,* 158 Pa.Cmwlth. 248, 632 A.2d 1 (1993), *appeal denied,* 537 Pa. 635, 642 A.2d 488 (1994). Further, only changes made by the regulations concern the level of dentists' supervision over dental hygienists' performance of certain services. The Association does not allege that the new regulations

restrict the permissible scope of dental hygiene services that the dental hygienists are authorized to perform.

The Association's allegations of change of their work schedule, reduced availability of dental hygiene services, reduced income, possible unemployment and the uncertainty of the ongoing day-to-day operations of dental hygiene care are merely anticipatory, speculative and too remote to support its claim of direct and immediate harm. As this Court stated, "because litigants may immediately challenge the validity of the regulation itself as a matter ancillary to the harm they claim occurred due to the *application* of the regulation to their interests, this post-enforcement remedy is an adequate and more efficient, because less speculative, statutory alternative to invoking this Court's original jurisdiction." *Concerned Citizens,* 632 A.2d at 4 (emphasis in original). Hence, we conclude that the Association's allegations of direct and immediate harm do not establish the justiciability of its pre-enforcement challenge to the regulations.

Accordingly, the Board's preliminary objections raising the justiciability of the Associations' challenge to the validity of the regulations in this Court's original jurisdiction are sustained, and the Association's petition for review is dismissed.[9]

### ORDER

AND NOW, this 1st day of March, 1996, Respondents' preliminary objections to the above-captioned petition for review are sustained, and said petition for review is dismissed.

---

9. Due to our disposition, it is unnecessary to address other preliminary objections raised by the Board.